UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　　Plaintiff,<br>vs.<br><br>WILLIAM SCOTT NOEL,<br><br>　　　　　　Defendant. | 3:06-cr-00064-JWS-JDR<br><br>**<u>RECOMMENDATION REGARDING MOTION TO SUPPRESS</u>**<br><br>(Docket Entry 18) |

　　　　Defendant William Scott Noel moves the court to suppress his statements made on December 28, 2005, to parole officers on grounds that they were taken in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and that his answers were involuntarily provided in violation of the Fifth Amendment of the U.S. Constitution. Docket entry 18. The motion is opposed by the government. Docket entry 28. An evidentiary hearing was conducted before the magistrate judge on September 18, 2006. Upon due consideration of the evidence adduced and

arguments of counsel, the magistrate judge recommends that the court adopt findings of fact and conclusions of law as set forth below, and that the motion to suppress be denied.

## Findings of Fact

On December 28, 2005, Williams Scott Noel was on State probation and parole. His parole which began in March 2005 contained a condition permitting his parole officer to search his residence. Noel was supervised on parole by Officer John Heritscko, who was the primary supervising officer. Patrick Kross of the Juneau Probation Office supervised Noel on probation.

On December 28, 2005, Officers Heritscko and Kross decided to conduct a home visit of Noel based on information that he had not reported to the probation office the month before as required and based on information received from the Juneau police that there was possibly a weapon on Noel's premises. The information about the firearm came from Officer Van Sickle who received information from an informant, Tonya Lemons, a probationer, that Noel was in possession of narcotics and a firearm.

The officers proceeded to the trailer where Noel resided. Outside of the trailer the officers noted two parked vehicles; a dark green SUV type vehicle and an older red Buick sedan. Although they carried firearms and wore Kevlar vests at no time did they display their weapons. Officer Heritscko knocked on the door in a

normal manner but loud enough so that anyone inside the trailer could likely hear the knock. The officers announced their presence. After two or three minutes Noel came to the door. He appeared as if he had just woken up; his clothes were wrinkled and rumpled, he was not wearing shoes, and he seemed a little groggy. He invited the officers to come inside. Immediately the officers observed that the place was in disarray, very cluttered, and there was a lot of dog feces over most of the hard floor surface of the residence. Noel was cordial, cooperative. No one spoke in a raised voice. One of the officers asked Noel to secure his dog(s) and Noel put the dog(s) in a back room.

The officers explained the purpose of their visit. Officer Kross asked Noel to come with him to the kitchen area. There, Officer Kross asked Noel to take a seat on the floor indicating an area that was clean and would place Noel out the immediate reach of any weapons that might be in the kitchen. Officer Kross directed Noel to keep his hands where he could see them. Officer Kross then conducted a safety check of the residence while Officer Heritscko stood in the vicinity of Noel.

Noel was cooperative in pointing out items that concerned the officers. Noel led Officer Heritscko to a back bedroom where drug paraphernalia was located. He produced a spoon with a white substance that he described as OxyContin. Officer Kross told Noel that he knew he had a gun and informed him that they would continue searching his residence until they found the weapon. The officers added

that if he would tell them where the weapon was located they would go directly there and search no further. No other statement was made to Noel to entice him to cooperate. Noel told Officer Kross that the firearm was in the red car, that the red car was locked, but the keys to the red car were in the green car. Officer Heritscko went to the green car and retrieved the keys. He came back into the residence and announced that he was having trouble getting the doors to the red car opened. Noel voluntarily stated that there was a mechanical malfunction with the door and that he knew how to open the door. Noel was allowed to leave the residence accompanied by Officer Kross. The two went outside where Noel opened the driver's door of the red vehicle.

A Hi-Point .9mm Pistol was found in the rear seat area behind the driver's seat wrapped in plastic inside a blue bag. The gun was loaded but there was no bullet in the chamber. After the officers found the gun they decided to take Noel to jail. The officers placed Noel under arrest for violating his parole and secured the trailer. He was handcuffed for violating his parole and taken to one of the officers vehicles. While the officers were walking Noel to the car Noel complained that he did not have his shoes. Officer Kross indicated that they did not have far to walk and that they were not going back inside to get the shoes because they had already secured the door to the trailer.

**Conclusions of Law**

1. Application of Miranda

Case law clearly establishes that a Miranda warning is required for "custodial interrogations" conducted by law enforcement officers. Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (*per curium*). Noel argues that he "effectively" was placed in custody at the time of the "interrogation," thereby entitling him to a Miranda warning before answering questions regarding any new criminal offense. The government does not dispute that the officers' questions concerning the firearm constituted interrogation. It argues that Noel was not in custody when he made the statements and he therefore was not entitled to the Miranda warning. I agree.

The threshold question is when should a parole officer Mirandize a parolee prior to questioning him during an unscheduled home visit. In Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136 (1984), the Supreme Court ruled that a probation officer need not Mirandize a probationer during a non-custodial meeting, even if the probationer is compelled to attend the meeting and answer questions. 465 U.S. at 431. The Court rejected the argument that a probation meeting is inherently coercive and declined to treat the probationer-probation officer relationship differently than other non-custodial questioning. The Supreme Court stated:

> A probationer cannot pretend ignorance of the fact that his
> probation officer "is a peace officer, and as such is allied,

>to a greater or lesser extent, with his fellow peace officers." Absent some express or implied promise to the contrary, he may also be charged with knowledge that "the probation officer is duty bound to report wrong doing by the [probationer] when it comes to his attention, even if by communication from the [probationer] himself."

Id. at 432, quoting Fare v. Michael C., 442 U.S. 707, 720 (1979).

In United States v. Kim, 292 F.3d 969 (9th Cir. 2002), the Ninth Circuit identified factors to consider in determining whether an individual is "in custody" for Miranda purposes. These factors include: (1) language used to summon the individual; (2) extent to which defendant is confronted with evidence of guilt; (3) physical surroundings of interrogation; (4) duration of detention; and (5) the degree of pressure applied to detain the individual. Each of these factors is addressed below. After examining all of the circumstances surrounding interrogation, the court must decide whether there was a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest. 292 F.3d at 973, citing, Stansbury v. California, 511 U.S. 318, 322 (1994). The inquiry is an objective assessment and does not focus on any subjective views of the officers or individual being questioned. 511 U.S. at 323.

In the instant case, I conclude that the parole officers did not establish a setting from which a reasonable person would believe that he was not free to leave. The encounter was cordial and Noel was cooperative and readily invited the officers into his residence.

Noel was contacted at his home; he was not in a police facility. Because he was on supervised release he was not free to avoid the officers' contact like the average citizen. But the parole officers' contact does not as such constitute a custodial setting for <u>Miranda</u>. Informing a parolee that the officers have information that he is in violation of his parole does not place him into custody. Noel was not questioned about how or when he acquired contraband. Rather he was told that the officers intended to search for a firearm. His cooperation was solicited without coercion. Noel assisted the parole officers in searching for drug paraphernalia and he retrieved a key to assist the officers in opening the car door so that it could be searched without being broken into. Although the officers were armed, there was no display or withdrawal of a weapon prior to or during the questioning. Noel readily secured his dogs in a back room at the officers' request. Noel never asked to leave the premises, nor was he told that he had to remain there. Because the residence was littered and contained canine feces, as a security measure the parole officers directed Noel to sit in a clean area of the kitchen where he could be observed away from any weapon that might be concealed nearby.

      Parole officer Patrick Kross maintained a vigilance over Noel while Officer Heritscko was in another room. Officer Kross stated that he never had to order Noel to do anything. He told Noel that the officers were going to search the premises for a weapon that they believed was present. Noel was not interrogated

about the location of any firearm(s).  Instead, he was invited to cooperate and shortcut any search of the premises.  Officer Heritscko was shown drug paraphernalia soon after entering the residence.  At this point Noel was clearly in violation of his conditions of parole.

From the officers' point of view they had grounds to arrest Noel at the outset although they chose not to do so based only on the missed monthly report. Noel was not placed in manual restraints until after the loaded pistol had been discovered.  He was not placed in handcuffs until the officers took him into custody. He was then placed in the back seat of one of the officer's vehicles.

The officer inquired as to Noel's drug use, and he admitted recent drug use and provided officers with a syringe and spoon with residue on it.  He stated that he had used marijuana and OxyContin earlier in the day.  When Noel was asked if he possessed a firearm, he informed the officers of a gun in his vehicle.  A .9mm pistol was found inside a canvas bag under the driver's seat of the vehicle at the residence.

The questioning occurred at the defendant's residence.  Had the parole officers been uniformed police officers, their questions in a like setting would not have constituted custodial interrogation.  An interview in a police station is not alone enough to create a custodial situation. The fact that Noel was present in his own residence does not convert the encounter into a custodial one.  Interviewing a

person at his home does not mean that the person was in custody for purposes of Miranda. United States v. Eide, 875 F.2d 1429, 1437 (9th Cir. 1989). One of the officers explained to Noel that they had received information that he was in possession of controlled substances and a firearm. Thus, Noel was provided some background about the officers' visit before he was asked incriminating questions. He was asked if he possessed any drug paraphernalia or a firearm. The information obtained from Noel during the interview was not elicited for the purpose of charging him with a new crime, nor was Noel charged at the time with a crime for which the questions were directed. There is no evidence that the parole officers were performing more than a simple "supervision contact." The encounter occurred during normal waking hours, and the questioning was not prolonged. While on parole, Noel could expect an occasional supervision contact at his residence.

In United States v. Nieblas, 115 F.3d 703 (9th Cir. 1997), the court held that because the defendant voluntarily appeared at the probation office for an interview which was arranged by appointment and because she was free to leave, the interview was not a "custodial interrogation" that triggered the right to Miranda warnings. *Id.* at 705.

In United States v. Andaverde, 64 F.3d 1305 (9th Cir. 1995), *cert. denied*, 516 U.S. 1164 (1996), the court noted that probation officers need not provide Miranda warnings to probationers in non-custodial meetings. Although the

instant case involves a meeting at the defendant's residence rather than the probation office, the location does not change the fact that the government may require a probationer to appear and discuss matters that affect his probationary status.

### 2. Voluntariness of Statements

Noel's assertion in his memorandum in support of his motion to suppress that the parole officers had their guns drawn and ordered him to kneel is simply not true. There was no formal arrest or restraint on his freedom of movement associated with a formal arrest to render his supervision contact a custodial one prior to the officers eliciting the incriminating statements he seeks to suppress.

Noel consented to be interviewed in his residence. The parole officers did not use intimidating or coercive language during the colloquy, and there is no evidence that Noel, himself, let alone any reasonable person, would have concluded that he felt coerced to talk by the officers. Noel was not handcuffed, nor was he told that he was under arrest prior to the questioning at issue. There is no evidence that the front door was locked after the parole officers entered.

The court considers the totality of the circumstances and the entire course of the officers' conduct in determining the voluntariness of the defendant's statements. *See, i.e.*, <u>Medeiros v. Shimoda</u>, 889 F.2d 819, 824 (9th Cir. 1989), *cert. denied,* 496 U.S. 938 (1990). Here, Noel knew the nature of the officers' suspicions

before he was questioned about his compliance with his conditions of release on parole. Noel revealed incriminating information to the parole officers without asserting any Fifth Amendment privilege. His disclosures to the parole officers were not compelled incriminations though the parole officers were seeking evidence of a violation of parole.

The instant case is unlike that of <u>Jones v. Cardwell</u>, 686 F.2d 754 (9th Cir. 1982), cited by Noel. In that case, Jones had been convicted of a crime and was in jail awaiting sentencing. He was instructed that he had no choice but to answer questions put to him by a probation officer during a pre-sentence interview. The court of appeals found that the State officers were aggressive in extracting from Jones a confession to other crimes without warning him of the consequences. The court held that Jones's confession was involuntary, and the sentencing judge violated Jones's Fifth Amendment rights by considering the confession for purposes of sentencing. The case turned on the issue of voluntariness of the defendant's confession, not the application of <u>Miranda</u>.

## Conclusion

I reject Noel's argument that the use at trial of his incriminating responses to the parole officers made prior to his formal arrest would violate the Fifth Amendment. There is no evidence adduced to support his argument that the officers gained admissions that led directly to the discovery of the firearm in the vehicle by

exploiting Noel's vulnerability as a parolee suspected of violating his supervision. Accordingly, the Motion to Suppress filed at Docket No. 18 should be DENIED. IT IS SO RECOMMENDED.

DATED this 28th day of September, 2006, at Anchorage, Alaska.

       /s/ John D. Roberts
      JOHN D. ROBERTS
      United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Monday, October 2, 2006**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Thursday, October 5, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).